D. K. AND EUNICE HATCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hatch v. Commissioner
Docket No. 37517-87.
United States Tax Court
T.C. Memo 1989-202; 1989 Tax Ct. Memo LEXIS 202; 57 T.C.M. (CCH) 280; T.C.M. (RIA) 89202; April 27, 1989. James F. McLeod and B. Edwin Bloomfield, for the petitioners. Dennis R. Onnen, for the respondent. PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rules 180, 181 and 182. [1]
Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1979
$ 2,344
1980
7,584
1981
5,955
1982
5,487
1983
1,761
1984
318
The sole issue remaining for determination is whether petitioners' Arizona and Missouri cattle breeding *204 operations was an activity not engaged in for profit within the meaning of section 183(a). [2]
Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners were residents of Powell, Missouri, at the time they filed their petition in this case. Petitioner D. K. Hatch (Dwight), worked as a locomotive engineer from 1967 until 1983. Throughout this period petitioners supplemented their income by operating small businesses, including a feed store, and intended to continue to supplement their income by the ranching operation after Dwight retired. During 1977, petitioners' feed store was condemned to provide freeway access, and petitioners began raising cattle. The Arizona ranch
During 1977, petitioners moved to a 42-acre ranch near Joseph City, Arizona. Although the purchase was not finalized until 1979, when a contract was executed, petitioners had always intended to purchase the land and worked it as if they were the owners. Petitioners *205 intended to use part of their land to raise alfalfa for hay and use the balance for grazing cattle. Because of the arid Arizona climate, petitioners purchased additional rights to draw water from a nearby irrigation canal. Petitioners were familiar with fodder and medicine from successfully operating their feed store. They obtained information about local cattle from the seller of the ranch. Petitioners consulted with the local agricultural agent as well as with neighboring farm owners. Further, Dwight grew up on a farm where crops and animals were raised. Initially, petitioners purchased four head of cattle and grazed them on an existing pasture. In order to increase their grazing capacity, petitioners concentrated on planting alfalfa. This entailed hauling fertilizer from Phoenix, Arizona, preparing the land and planting the seed. After the alfalfa had matured, petitioners subsequently increased their herd to approximately 12 cattle. Petitioners intended to increase their herd by purchasing impregnated cows and raising the calves for subsequent sale. Petitioners performed all of the work on the farm by themselves. This included preparing the land for the alfalfa crop, renovating *206 existing buildings, mending and installing fences, baling their own hay and caring for the cattle. Although petitioners were aware that they would not have a profit during the first 5 years, they expected the operation to be profitable after that time. However, starting in 1978, petitioner Eunice Hatch (Eunice) began visiting her son and daughter-in-law in Missouri. After a number of visits, Eunice expressed an interest in moving to Missouri. Dwight had been favorably impressed with the area during his several visits to Missouri and, in 1980, agreed to move there. In January 1982, petitioners sold their Arizona ranch, the equipment and the remaining eight head of cattle for a price in excess of $ 180,000. Petitioners received merchandise valued at $ 7,500 as the down payment and the balance in the form of promissory notes. The purchaser made interest payments in the amount of $ 800 per month during 1982 and for the first 3 months of 1983. However, the purchaser stopped making payments after March 1983, and has subsequently filed for Bankruptcy Title 11 United States Code chapter 13. During February 1988, petitioners received back the title to their Arizona *207 ranch. The Missouri ranch
In May 1980, petitioners purchased a 249-acre Missouri ranch which included approximately 25 head of cattle. Petitioners did not move to Missouri until 1983, after Dwight terminated his service with the railroad and wrapped up his activities in Arizona. During the interim, Eunice made a number of trips to Missouri to supervise the building of their home and to oversee the cattle operation. The day-to-day cattle operations were handled by the seller of the ranch who agreed to manage the property until petitioners moved to Missouri. Since moving to Missouri, petitioners have increased the amount of land available for alfalfa production from 25 to 50 acres. Petitioners do all of the work on their ranch themselves and, on an average, spend between 8 and 10 hours a day maintaining such an operation. There are no amenities on petitioners' ranch. Initially, petitioners intended to breed their cattle and raise and sell the calves. However, due to severe winter weather during 1985 or 1986, petitioners lost eight cows and several calves. Petitioners realized that they would not be successful with this breeding method and changed their operation to purchasing *208 steers in the spring, feeding them throughout the summer and selling them in the fall. This enabled petitioners to minimize the effects of the harsh winters. Petitioners have also purchased several different breeds of steers in an effort to increase their profits while minimizing their costs. Presently, petitioners own 23 head of cattle, several less than when they began. Petitioners had planned to use the proceeds from the sale of their Arizona ranch to purchase more cattle for their Missouri herd. However, the loss of the revenue and the additional expense incurred in repassing and operating the Arizona ranch stymied the growth of their Missouri ranch. Petitioners now estimate that it may take as long as 6 years to reach the point where they can sell the 60 head of cattle per year that would be required in order to earn an annual profit. Petitioners realize that it will take an additional period to recover the losses they have incurred to date. Eunice kept the financial records in addition to working on the ranch. She collected the receipts for each month in separate envelopes and sorted the receipts at her leisure. The expenditures and receipts were then recorded in an annual *209 journal. Petitioners provided the Court with their journals for the 1983 and 1984 tax years, and Eunice testified that the remaining records had been given to their attorneys or accountants. It is clear from the petitioners' testimony that, during 1980-1983, petitioners did not clearly designate which of the various expenditures applied to the operation of the ranch. Respondent disallowed the losses petitioners claimed with respect to their ranches on the basis that petitioners did not engage in their ranching activity with an intention of making a profit. Respondent claims that petitioners failed to comply with the guidelines established under section 183, and that their deductions should not be allowed. In essence, respondent claims that petitioners' ranches were little more than their choice of residence. Section 183(a) provides that if an "activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." When an activity is not engaged in for profit and there is no gross income therefrom, section 183(b) allows only those deductions that are allowable whether or not the activity is engaged *210 in for profit (e.g., interest and taxes). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." In determining whether an activity is engaged in for profit, petitioners must show that they engaged in the activity with an actual and honest objective of making a profit. Surloff v. Commissioner,81 T.C. 210, 233 (1983); Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The question of whether the requisite profit objective exists is to be resolved on the basis of all the surrounding facts and circumstances of the case. Section 1.183-2(b), Income Tax Regs.; Golanty v. Commissioner,72 T.C. 411 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981). Greater weight is to be given to the objective facts than to petitioners' statements of their intent. Section 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra at 645. Petitioners have the burden of proof *211 to show that they had the requisite profit objective and that respondent's determination that the activity was not engaged in for profit is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Some of the relevant factors to be considered in evaluating whether an activity is engaged in for profit are listed in section 1.183-2(b), Income Tax Regs., including: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No one factor is conclusive in making this determination. Allen v. Commissioner,72 T.C. 28, 34 (1979). We find that petitioners put the same effort and skill into each ranch. Further, *212 the evidence indicates that they purchased both ranches with the same intention. Accordingly, we will only discuss the ranches separately when necessary. For the most part, petitioners carried on their activity in a business-like manner. Petitioners minimized their costs by searching for inexpensive materials and by doing all of the work themselves. Although petitioners' bookkeeping skills leave something to be desired, we are convinced that they made a sincere effort to maintain adequate business records. Further, petitioners changed their method of operation several times in response to perceived changes in circumstances. The hours petitioners spent working on their ranches strongly indicates that petitioners did not treat their ranches as hobbies. Petitioners worked full days on their ranching activities. Petitioners spent a great deal of time clearing and preparing their land in addition to the time they spent caring for their cattle. These are not the types of activities normally associated with personal pleasure. Further, we are convinced that petitioners did not have the financial means to easily suffer their losses. These factors convince this Court that petitioners *213 operated their ranches with the requisite profit objective. We are not convinced by respondent's claim that petitioners' quick sale of the Arizona ranch indicates they lacked a profit objective. We believe that petitioners initially intended to stay in Arizona until the ranch was profitable. It is clear that their decision to move to Missouri was the result of subsequent activities, and the decision to move does not indicate that petitioners always intended to operate the Arizona ranch for a short period of time. Further, we are not surprised that petitioners were not able to sell their ranch immediately, and do not believe that their actions between 1980 and 1982 were imprudent. Additionally, we are convinced that petitioners are sincerely attempting to realize a profit operating the Missouri ranch. We understand that the ramifications of the Arizona purchaser's bankruptcy has been a major factor in their lack of success. We do not find fault with petitioners for this misfortune. Although petitioners have suffered substantial losses operating the ranches, we do not attribute the losses to a lack of effort or commitment by the petitioners. Accordingly, we hold that petitioners' *214 ranching activities were engaged in with an objective of earning a profit. Decision will be entered under Rule 155.
Footnotes
1. All subsequent section references are to the Internal Revenue Code of 1954, as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners' entitlement to an investment tax credit and a deduction for moving expenses depend on our resolution of the section 183 issue.↩